[Cite as *State v. Oliver*, 2021-Ohio-2543.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-07-041 |
| | : | O P I N I O N |
| - vs - | | 7/26/2021 |
| | : | |
| GREGORY OLIVER, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2020 CR 0211


Mark J. Tekulve, Clermont County Prosecuting Attorney, Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, Assistant Public Defender, for appellant.


**HENDRICKSON, J.**

{¶1} Appellant, Gregory Oliver, appeals his conviction and sentence in the Clermont County Court of Common Pleas for multiple theft offenses. For the reasons set forth below, we affirm the trial court's decision.

{¶2} In February 2020 Oliver was charged by information with six counts of theft in violation of R.C. 2913.02(A)(2), a felony of the third degree. The charges stemmed from allegations that between November 2011 and December 2018 Oliver used his position as

the owner of "Oliver Financial Services Corporation" to take over $1 million from his elderly clients. In March 2020 Oliver waived the indictment and pleaded guilty as charged in the information.[1] As a part of Oliver's plea agreement, the state indicated it intended to seek restitution, and Oliver agreed the amount of restitution would not be limited to the six counts in the information. After a hearing, the trial court imposed an order of restitution for $990,027.83 and sentenced Oliver to 18 months in prison for each of the six counts, each to be served consecutively with one another, for an aggregate prison term of nine years.

{¶3} Oliver now appeals, raising six assignments of error for our review.

{¶4} Assignment of Error No. 1:

{¶5} THE TRIAL COURT ERRED IN ORDERING $990,027.83 IN RESTITUTION.

{¶6} Oliver initially argues the trial court's decision to award $990,027.83 in restitution was plain error and a breach of his plea agreement. Specifically, Oliver claims he had a right to have his restitution capped at $515,761.76, and the trial court's decision to award an amount greater than what the parties agreed to without addressing Oliver directly was a breach of his plea agreement and constitutes plain error. We disagree with Oliver's claims.

{¶7} R.C. 2929.18(A)(1) grants a trial court the authority to order restitution by an offender to the victim, or any survivor of the victim, in an amount commensurate with the victim's economic loss. *State v. Hubbard*, 12th Dist. Butler No. CA2014-03-063, 2015-Ohio-646, ¶ 65. When imposing restitution, the amount of restitution must bear a reasonable relationship to the victim's actual loss to comport with due process. *State v. Bowling*, 12th Dist. Butler No. CA2018-07-148, 2019-Ohio-751, ¶ 6. Thus, the restitution amount is limited

---

1. Although only six counts were included in the information, the state identified 18 victims at the plea and sentencing hearings. Due to Oliver's agreement to take responsibility for his actions and plead guilty, the state agreed to limit the information to six counts of theft, as opposed to the possible 18 counts of theft.

to the actual loss or damage caused by the offender and must be established to a reasonable degree of certainty. *State v. Collins*, 12th Dist. Warren No. CA2014-11-135, 2015-Ohio-3710, ¶ 32.

{¶8} In order to determine the proper amount of restitution, R.C. 2929.18(A)(1) indicates the court "may base the amount of restitution it orders" on the following:

> an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense.

{¶9} As noted above, Oliver does not claim the amount of restitution ordered, $990,027.83, inaccurately reflects the outstanding economic loss suffered by the 18 victims. Instead, Oliver argues on appeal that the state agreed, as a part of his plea, that his restitution would be capped at $515,761.76, and that victims with pending civil lawsuits would not be included in the restitution figure. Thus, by ordering a restitution amount greater than the allegedly agreed amount, Oliver contends the trial court breached his plea agreement.

{¶10} Generally, a plea agreement is contractual in nature and subject to contract law principles. *State v. Bethel*, 110 Ohio St. 3d 416, 2006-Ohio-4853, ¶ 50. In order to determine whether a plea agreement has been breached, courts must examine what the parties reasonably understood at the time the defendant entered his guilty plea. *State v. McCartney*, 12th Dist. Clinton No. CA2005-03-008, 2005-Ohio-5627, ¶ 8, citing *State v. Vincent*, 4th Dist. Ross No. 02CA2672, 2003-Ohio-2591. The intent of the parties to a contract presumptively resides in the ordinary meaning of the language employed in their agreement. *State v. Todd*, 12th Dist. Brown Nos. CA2003-01-001 and CA2003-03-006, 2004-Ohio-2902, ¶ 8, citing *State v. Ford*, 4th Dist. Lawrence No. 97CA32,1998 Ohio App.

LEXIS 761, *3 (Feb. 18, 1998).

{¶11}  During the plea hearing, the trial court reviewed the "Written Plea of Guilty on Information" form ("plea form") with Oliver during its Crim.R. 11 colloquy.  The trial court asked Oliver whether he had read the front and back of the plea form and signed it, and confirmed he had no questions about the form.  Oliver responded affirmatively to each question.

{¶12}  The trial court then discussed the specific charges of the information with Oliver and detailed the potential prison term and maximum fine for each count.  The trial court then turned to the issue of restitution, and the following discussion ensued:

> The Court: All right.  The state is seeking restitution in this matter.  Do you understand that?
>
> [Oliver]: Yes, I do.
>
> The Court: All right.  Now, I thought there was some more details about the restitution in terms of are people included in the restitution amount that aren't part of the six counts?
>
> [The state]: Yes, your honor.
>
> The Court: Okay.
>
> [The state]: And I was going to read that with the facts, if that's okay[.]
>
> The Court: It is. * * * But I also, when probation goes over -- for me, to have a memory -- * * * of the thousands of cases I see and do, I just want to make sure that wer'e -- that the restitution is not just limited to the six counts.
>
> [The state]: That's correct.
>
> The Court: All right. Can you just put that in writing in here? * * * You don't have to apologize, I just want to know that I'm going outside the six counts. Is that your understanding, Mr. Haas?
>
> [Defense counsel]:  That is our understanding, Judge.

{¶13}  At that point, the prosecutor added a handwritten notation to the plea form

- 4 -

which states "Restitution not limited to 6 counts." Oliver and his counsel agreed to the amended language on the record at the hearing. With the newly added language, that section of the plea form states in its entirety that, "No promises have been made except as part of this plea agreement, stated entirely as follows: State is seeking restitution and prison. Restitution not limited to 6 counts."

{¶14} In addition to the state's notation described above, the plea form contains other handwritten notes from the trial court judge, including the notations of "18 victims" and "Rest $515,761.76, state seeking" near the signature lines on the back of the form. It is unclear from the record when the trial court judge made these notations.

{¶15} The trial court then advised Oliver of the constitutional rights he was waiving by pleading guilty, and Oliver indicated he understood those rights. Oliver confirmed a final time that he had no remaining questions and proceeded to plead guilty on the six counts of the information.

{¶16} After Oliver entered his pleas, the state proceeded with its statement of facts. During its statement of facts, the prosecutor stated, "as to restitution, just for the record, the state is seeking restitution, your honor, for most of the victims. The total amount taken is, as I've said before 1.1 million dollars. However, the state is only seeking restitution of $515,761.76, as some of those victims have filed civil suits against [Oliver], and * * * the state believes restitution can be handled through those civil suits appropriately, and then also a small percentage of the monies has been paid back[.]"

{¶17} Defense counsel accepted the state's facts as being accurate, but noted that "there's a lot of money involved here, and there could be some more owed, or a little less." According to defense counsel, the restitution amount was "fluid" at the time of the plea hearing.

{¶18} The trial court then accepted Oliver's guilty pleas and set the matter for

sentencing.

{¶19}  At the sentencing hearing, the trial court discussed the restitution order at length.  The trial court's discussion began with the restitution amount, and whether that amount should include the pending civil lawsuits.  The trial court concluded that, although the plea form indicated the state was seeking restitution in the amount of $515,761.76, it planned to include all victims in its restitution award.  According to the record, the trial court and defense counsel "talked about that, and all the numbers."  The trial court then, in open court and on the record, advised the victims with pending lawsuits regarding their inability to recover from the defendant in this case if they settled their civil claims in full.

{¶20}  The trial court then named each of the 18 victims, many of whom either attended the sentencing hearing or had a family member present in their absence, and noted on the record the amount of restitution owed for each individual. The court indicated the total restitution owed was $990,027.83, and defense counsel indicated the number was accurate, they were "good with that," and confirmed they had "nothing contradictory to that[.]"

{¶21}  With regard to the original $515,761.76 the state set forth at the plea hearing, the trial court explained that number was "completely off the table."  Instead, consistent with Marsy's Law as set forth in the Ohio Constitution, the trial court ordered "full and timely restitution" for all the victims, and concluded it had no ability to deduct the amounts sought in civil lawsuits. Instead, the trial court elected to advise the victims with civil lawsuits regarding their abilities to collect.

{¶22}  After reviewing the above, we find the trial court did not commit plain error in ordering $990,027.83 in restitution.  Specifically, contrary to Oliver's claims on appeal, there is no evidence in the record that the parties conditioned Oliver's guilty pleas upon the promise that the trial court would order $515,761.76 or less in restitution.  In support of his

- 6 -

argument, Oliver points to the trial court judge's handwritten notation on the plea form indicating the state was seeking $515,761.76 in restitution. However, there is no indication in the record that the trial court judge made his notation prior to the time Oliver signed the plea form or entered his guilty pleas. Additionally, the notation is not included under the section referencing promises but is instead written near the form's signature blocks and is accompanied by additional, unrelated notes made by the trial court judge. Thus, despite the trial court judge's note regarding the restitution amount sought by the state, the plea form reflects Oliver was not promised the restitution would be capped at that amount nor was he promised that any specific amount of restitution would be ordered. Rather, the record indicates Oliver was merely promised the state was seeking restitution and that the restitution amount would not be limited to the six counts of the information.

{¶23} Furthermore, while the trial court is permitted to consider the state's recommendation when determining the restitution amount, it is not bound by the state's recommendation. R.C. 2929.18(A)(1). Instead, if the restitution amount is not a condition of any plea agreement between the parties, the trial court is free to consider a number of factors when determining the restitution amount and is only limited to ordering an amount that does not exceed the amount of economic loss suffered by the victims. *Id.*; see also *State v. Speweike*, 6th Dist. Lucas No. L-10-1198, 2011-Ohio-493, ¶ 39 (stating that in a plea agreement, "criminal defendants can stipulate to the amount of restitution to be ordered as a part of a sentence under R.C. 2929.18[A][1]").

{¶24} Moreover, there is no evidence in the record that the trial court promised it would cap the amount of restitution at $515,761.76, or agreed to order the amount sought by the state. Rather, the record reflects the trial court considered limiting the amount of restitution to exclude the pending civil suits, but ultimately declined to do so given the requirements of Marsy's Law and his advisements to the three victims with pending civil

lawsuits.

{¶25} Lastly, it is evident from the record that Oliver was aware, at the time of his pleas, that the amount of restitution was undecided and "fluid." Similarly, neither Oliver nor his counsel objected to or disputed the amount of restitution set forth by the trial court during the sentencing hearing. If Oliver believed the amount of restitution ordered was excessive or improper, he had the opportunity dispute the restitution award at the sentencing hearing. *State v. Getz*, 12th Dist. Butler No. CA2015-08-159, 2016-Ohio-3397, ¶ 16. Such a dispute would have required the trial court to hold a hearing to establish the appropriate amount of restitution. *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, ¶ 22. Instead, Oliver and his counsel agreed the restitution figure was correct. Thus, we find no merit to Oliver's claim on appeal that his pleas were conditioned upon an agreed amount of restitution.

{¶26} Accordingly, we find the trial court did not err in ordering $990,027.83 in restitution, and Oliver's first assignment of error is overruled.

{¶27} Assignment of Error No. 2:

{¶28} APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS WAS VIOLATED AS THE BILL OF INFORMATION FAILED TO DELINEATE WHICH OF THE 18 VICTIMS WERE REPRESENTED IN THE SIX COUNTS OF THE BILL.

{¶29} In his second assignment of error, Oliver argues the bill of information was deficient because the state failed to identify the victim of each count. Due to the deficiency, Oliver contends his substantial rights guaranteed by the Fifth Amendment's Double Jeopardy Clause were violated, as he "has no way of knowing which of the 18 victims would be barred from bringing a future criminal action[.]" We disagree.

{¶30} As an initial note, Oliver failed to timely object to this alleged defect in the information. Therefore, he has waived all but plain error on appeal. *State v. Mielke*, 12th Dist. Warren No. CA2012-08-079, 2013-Ohio-1612, ¶ 29; *State v. Horner*, 126 Ohio St. 3d

466, 2010-Ohio-3830, paragraph three of the syllabus. Pursuant to Crim.R. 52(B), an alleged error constitutes plain error only if the error is obvious and but for the error, the outcome clearly would have been different. *State v Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 41. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *Id*.

{¶31} The purpose of a charging instrument is to inform the accused that a charge has been lodged against him and to provide him with an indication of the nature of that charge. *Middletown v. Blevins*, 35 Ohio App. 3d 65, 67 (12th Dist.1987). In general, an indictment is constitutionally adequate if it (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," and (2) "enables him to plea an acquittal or conviction in bar of future prosecutions for the same offense." *State v. Wagers*, 12th Dist. Preble No. CA2009-06-018, 2010-Ohio-2311, ¶ 11, citing *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887 (1974). However, pleading guilty waives many errors, including a defect in the indictment. *State v. Kibble*, 8th Dist. Cuyahoga No. 103822, 2017-Ohio-12, ¶ 20, citing *State v. Spates*, 64 Ohio St.3d 269, 271-272 (1992).

{¶32} As noted above, Oliver filed a written waiver of his right to proceed by indictment and consented to proceeding by information. Crim.R. 7 requires an information to be signed by the prosecuting attorney or in the name of the prosecuting attorney, and to contain a statement that the defendant has committed a public offense specified in the information. Crim.R. 7(B). "The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved." *Id*. Ohio law does not require that a victim be named in a charging instrument when the identity of the victim is not an essential element of the crime. See *State v. Cicerchi*, 182 Ohio App.3d 753, 2009-

Ohio-2249, ¶ 35, fn. 7 (8th Dist.).

{¶33} Oliver was charged with six counts of theft, each in violation of R.C. 2913.02(A)(2). That statute required the state to show that Oliver knowingly obtained or exerted control over the property or services beyond the scope of the express or implied consent of the owner or person authorized to give consent, with the purpose of depriving the owner of property or services. Thus, the victim's name is not an essential element of R.C. 2913.02(A)(2).

{¶34} In this case, the bill of information alleged the following in each of the six counts:

> Gregory Oliver on or about November 2011 through December 2018 in Clermont County, Ohio, with purpose to deprive the owner of property or services, did knowingly obtain or exert control over either the property or the services beyond the scope of the express or implied consent of the owner or person authorized to give consent and the value of the property or services stolen is equal to or exceeds seven thousand five hundred dollars and is less than thirty seven thousand five hundred dollars, and the victim of the offense is an elderly person.

> Contrary to and in violation of Section 2913.02(A)(2) of the Revised Code of Ohio, a felony of the third degree, and against the peace and dignity of the State of Ohio.

The language within the bill of information closely tracks the language, and the elements, set forth in R.C. 2913.02(A)(2), and sufficiently apprised Oliver of the charges against which he must defend.

{¶35} Additionally, the record reflects the state read all 18 victims' names, and their corresponding amounts of restitution owed, into the record during the sentencing hearing. The state also read the 18 victims' names into the record at the plea hearing, and specifically noted that, "the total victims included in this bill of information is 18, and I'm going to list them all, if that's okay with the [c]ourt." Thus, there is no question that Oliver knows the

identities of the victims associated with the crimes alleged in the information, as well as those not subject of the six counts of the bill of information. Furthermore, there is no dispute that the state agreed to limit the information to six counts in light of Oliver's ability to take responsibility for his actions. These facts prevent Oliver from later being indicted for any offenses related to the theft of funds from any of the 18 victims identified in open court on the record and allowed Oliver to enter a plea in bar of future prosecutions for the same offense. As a result, we decline to find plain error occurred in this circumstance.

{¶36} However, even if the bill of information was insufficient, Oliver could have requested an amendment by the state or a bill of particulars. Crim.R. 7(D). His failure to do so precludes him from establishing prejudice. *State v. Bennett*, 12th Dist. Brown No. CA2004-09-028, 2005-Ohio-5898, ¶ 34 (reversed on other grounds). Thus, appellant's constitutional right to due process was not violated. *See id.*; *Wagers*, 2010-Ohio-2311 at ¶ 15.

{¶37} Therefore, Oliver's second assignment of error lacks merit and is overruled.

{¶38} Assignment of Error No. 3:

{¶39} APPELLANT'S GUILTY PLEAS WERE NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY MADE AND MUST THEREFORE BE VACATED.

{¶40} Next, Oliver argues his guilty pleas should be vacated because they were not knowingly, intelligently, and voluntarily entered. Specifically, Oliver claims the trial court failed to comply with Crim.R. 11(C)(2)(a) and (b) when it ordered restitution in an amount greater than $515,761.76 and failed to require the identification of the six victims represented in the bill of information. After a review of the entire record, we disagree with Oliver's claims.

{¶41} When a defendant enters a guilty plea in a felony criminal case, the plea must be knowingly, intelligently, and voluntarily made. *State v. Smith*, 12th Dist. Warren Nos.

CA2019-10-113 and CA2019-11-121, 2020-Ohio-3074, ¶ 7. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States and Ohio Constitutions. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, ¶ 22. To ensure that a defendant's guilty plea is knowingly, intelligently, and voluntarily made, the trial court must engage the defendant in a plea colloquy pursuant to Crim.R. 11(C). Specifically, the court must notify the defendant of the constitutional rights set forth in Crim.R. 11(C)(2)(c) and make the determinations and give the warnings that Crim.R. 11(C)(2)(a) and (b) require. *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, ¶ 11.

{¶42} Crim. R. 11(C)(2)(a) and (b) requires the trial court to do the following before accepting a plea of guilty:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

{¶43} "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error." *State v. Dangler*, 162 Ohio St. 3d 1, 2020-Ohio-2765, ¶ 13. The test for prejudice is whether the plea would have otherwise been made. *Id.* at ¶ 15.

{¶44} At issue is whether the trial court complied with Crim.R. 11(C)(2)(a) and (b) when it did not inform Oliver it would impose restitution in the amount of $990,027.63. After a review, we find that trial court complied with the mandates of Crim.R. 11 before accepting Oliver's guilty pleas.

{¶45} Regarding the warning set forth in Crim.R. 11(C)(2)(a) and (b), the trial court asked Oliver if he understood that by pleading guilty, he was making a complete admission of guilt that he committed the offenses included in the bill of information and the plea form. Oliver responded affirmatively. The trial court then discussed each of the six counts of the information, and notified Oliver that a violation of R.C. 2913.02(A)(2) is a felony of the third degree, carries a potential prison sentence from 9 to 36 months, and a $10,000 fine. Oliver responded he understood. The trial court then advised that all together, Oliver could serve a maximum prison sentence of 216 months and pay a fine of $60,000. Oliver again responded he understood.

{¶46} Regarding restitution, the trial court informed Oliver the state was seeking restitution, and Oliver responded he understood. The trial court then indicated the restitution would not be limited to the six counts of the information, to which defense counsel indicated that was their understanding, and the notation was added to the plea form.

{¶47} The trial court then advised Oliver that he would be subject to three years of optional postrelease control if he was sentenced to prison and discussed the implications of a subsequent violation of his postrelease control. Oliver responded he understood. The trial court then advised Oliver that the trial court could elect to put Oliver on probation, or community control, for up to five years, and described the implications if Oliver were to not comply with the terms of his probation. Oliver indicated again that he understood.

{¶48} In consideration of the above, we find the trial court complied with Crim.R. 11(C)(2) before accepting Oliver's guilty pleas. Contrary to Oliver's claims on appeal, the record does not reflect that "the trial court advised [Oliver] that he would face, as part of the maximum penalty, restitution no greater than $515,761.76." Rather, and as discussed in Oliver's first assignment of error, a plain reading of the transcript reveals that the specific amount of restitution was not established at the time of Oliver's pleas, but that Oliver and

the state contemplated a restitution award not limited to the six counts of the information. Oliver was advised of these facts and indicated he understood them before entering his guilty pleas. While the state indicated it was only seeking $515,761.76 in restitution, an amount that excluded damages sought in three victims' pending civil lawsuits, the trial court never purported to Oliver that restitution would be capped at that amount. Instead, the trial court confirmed the restitution amount was fluid, was subject to change, and was not limited to the counts of the information.

{¶49} Moreover, and as discussed above, the plea form does not indicate Oliver was promised the amount of restitution would be capped at a certain amount, or that the amount would only include a specific number of victims. Thus, despite the trial court's decision to include the damages owed to all 18 victims, as opposed to the state's 15 proposed victims, the terms of Oliver's plea agreement were honored, and the sentence imposed was consistent with those terms.

{¶50} We are also unpersuaded by Oliver's remaining argument that his guilty pleas should be vacated because the trial court failed to identify, or require the identification of, the six victims represented by the bill of information. As discussed more thoroughly in Oliver's second assignment of error, because Oliver cannot establish any prejudice resulting from the lack of identification of the six victims, this claim also fails.

{¶51} Based upon the foregoing, we conclude the trial court complied with Crim.R. 11(C)(2), and that Oliver's pleas should not be vacated. Oliver's third assignment of error is therefore overruled.

{¶52} Assignment of Error No. 4:

{¶53} THE TRIAL COURT ERRED IN FAILING TO CONSIDER APPELLANT'S PRESENT AND FUTURE ABILITY TO PAY RESTITUTION AS REQUIRED BY R.C. 2929.18(B)(5) (sic).

{¶54} In his fourth assignment of error, Oliver argues the trial court erred in declining to consider his present and future ability to pay before ordering restitution. In response, the state argues the trial court was not required to consider Oliver's ability to pay because Marsy's Law entitles victims to full and timely restitution, and therefore, the trial court did not err in failing to consider his ability to pay because his ability to do so is irrelevant. After a review of the record, we agree with the state, and find the constitutional amendment known as Marsy's Law supersedes R.C. 2929.19(B)(5) to the extent it allows a trial court to order less than full restitution to a victim. Thus, the trial court is not required to consider an offender's ability to pay before ordering restitution.

{¶55} The issue raised in this case requires us to interpret the interplay between an offender's rights as set forth in R.C. 2929.19(B)(5), which requires a trial court to consider an offender's ability to pay before ordering restitution, and the trial court's legal duty to provide victims with full and timely restitution in accordance with Marsy's Law.

{¶56} Pursuant to R.C. 2929.18, a trial court may impose restitution as part of a felony sentence. To impose a financial sanction, such as restitution, pursuant to R.C. 2929.18, or a fine under R.C. 2929.32, R.C. 2929.19(B)(5), requires a trial court to consider the offender's present and future ability to pay the amount of the sanction or fine. Here, when determining the amount of restitution, the trial court specifically noted at the sentencing hearing and in its sentencing entry it was not considering Oliver's ability to pay in its restitution analysis. Oliver did not object to the order of restitution, and therefore he has waived all but plain error review on appeal. *State v. Blevings*, 12th Dist. Warren No. CA2017-12-175, 2018-Ohio-4382, ¶ 17. Traditionally, plain error has been recognized where a trial court imposes restitution on an offender without considering the offender's present and future ability to pay. *State v. Chaffin*, 12th Dist. Madison No. CA2016-08-026, 2017-Ohio-4041, ¶ 11.

{¶57} On the other hand, the constitutional amendment known as Marsy's Law became effective on February 5, 2018, and expands the rights afforded to victims of crimes. *State v. Lee*, 12th Dist. Warren No. CA2018-11-134, 2019-Ohio-4725, ¶ 12. As adopted, Marsy's Law states that its express purpose is to secure justice and due process for victims and provide rights to victims that must be protected with the same vigor as an accused's rights. Article I, Section 10a(A), Ohio Constitution. At issue here, the provision gives a victim the right "to full and timely restitution from the person who committed the criminal offense or delinquent act against the victim." *Id.* at Section 10a(A)(7). Notably, Ohio's version of Marsy's Law states "[a]ll provisions of this section shall be self-executing and severable, and shall supersede all conflicting state laws." *Id.* at Section 10a(E).

{¶58} In *State ex rel. Howery v. Powers*, 12th Dist. Butler No. CA2019-03-045, 2020-Ohio-2767, this court held that under the new provisions in Marsy's Law, there is a clear legal duty of the trial court to provide for full and timely restitution. *Howery* at ¶ 12. In that case, we considered the interplay between Marsy's Law and the trial court's authority to award restitution and determined that Marsy's Law does not conflict with the provisions of 2929.18(A)(1). *Id.* at ¶ 16. Additionally, the Ohio Supreme Court recently clarified that,

> Marsy's Law also does not provide a procedural mechanism for ordering restitution. It merely states that a victim may assert his or her constitutional rights in any proceeding involving the underlying criminal act. Article I, Section 10a(B).

*Centerville v. Knab*, 2020-Ohio-5219, 162 Ohio St. 3d 623, ¶ 18. Thus, in consideration of the supreme court's finding in *Knab* and this court's holding in *Howery*, we conclude Marsy's Law creates a clear legal duty for the trial court to provide for "full and timely restitution" in accordance with the procedures set forth in R.C. 2929.18. *Id.*; see also *Howery* at ¶ 12.

{¶59} In order to determine whether a conflict exists between the mandates of Marsy's Law and R.C. 2929.19(B)(5), we must first discern the meaning of "full restitution"

as used in the constitutional provision. As a general rule, courts apply the same rules of construction when construing the Constitution that they use when construing statutes in order to determine the intent of those adopting a constitutional provision. *Smith v. Leis*, 106 Ohio St. 3d 309, 2005-Ohio-5125, ¶ 57.

{¶60} "The first step in determining the meaning of a constitutional provision is to look at the language of the provision itself." *State ex rel. Maurer v. Sheward*, 71 Ohio St. 3d 513, 520 (1994). Accordingly, this court must "consider the common and ordinary meaning of the terms contained within our Constitution in order to interpret them properly." *State ex rel. Bd. of Cty. Commrs. v. Zupancic*, 62 Ohio St. 3d 297, 300 (1991), citing *Cleveland Tel. Co. v. Cleveland*, 98 Ohio St. 358, 368-369 (1918). "Words used in the Constitution that are not defined therein must be taken in their usual, normal, or customary meaning." *State ex rel. Taft v. Franklin Cty. Court of Common Pleas*, 81 Ohio St. 3d 480, 481 (1998).

{¶61} When a court construes a constitutional amendment, it must presume that those adopting the amendment had in mind existing constitutional or statutory provisions and their judicial construction, touching the subject dealt with in the amendment. *State v. Carswell*, 114 Ohio St. 3d 210, 2007-Ohio-3723, ¶ 6. Constitutional amendments do not repeal existing statutes unless the repugnancy between the two is clear and the two are so contrary to each other that they cannot be reconciled. *State ex rel. Evans v. Dudley*, 1 Ohio St. 437, 441 (1853). This "repeal by implication" is not favored. *Id.*

{¶62} A statute must be sustained and enforced unless it is in clear and irreconcilable conflict with some express provision of the constitution; and, on the other hand, if the constitutional provision and the legislative enactment are so clearly in conflict that they cannot both stand the statutory provision must of course fall. *State ex rel. Price v. Huwe*, 105 Ohio St. 304, 306 (1922).

{¶63} Pertinent here, Marsy's Law states the following:

> To secure for victims justice and due process throughout the criminal and juvenile justice systems, a victim shall have the following rights, which shall be protected in a manner no less vigorous than the rights afforded to the accused:
>
> (7) to full and timely restitution from the person who committed the criminal offense or delinquent act against the victim[.]

Article I, Section 10a(A)(7), Ohio Constitution.

{¶64} The language enacted in Ohio's constitution makes clear that a victim of a crime is constitutionally entitled to compensation in the amount of "full restitution." Neither the Ohio Constitution nor General Assembly has further defined the term "full." This court must therefore look to the plain and ordinary meanings of the word. *See, e.g., State ex rel. Becker v. Faris*, 12th Dist. Clermont No. CA2020-10-058, 2021-Ohio-1127, ¶ 23. This can be accomplished by referring to the dictionary definition of the word "full." *Id.*, citing *Commercial Intertech Corp. v. Guyan Intl.*, 11th Dist. Portage No. 99-P-0119, 2001 Ohio App. LEXIS 1556, *5 (Mar. 30, 2001) (a dictionary is a "reliable source for finding the plain and ordinary meaning of a word"). There is no requirement, however, that a particular dictionary's definition be used. *Id.*

{¶65} The term "full" has been defined as "complete especially in detail, number or duration." See *Miriam-Webster's Online Dictionary and Thesaurus*, https://www.merriam-webster.com/dictionary/full?src=search-dict-box (accessed July 11, 2021). The term has also been defined as "complete; with nothing missing." *Oxford Learner's Dictionaries*, https://www.oxfordlearnersdictionaries.com/us/definition/english/full_1?q=full (accessed July 11, 2021). "FULL implies the presence or inclusion of everything that is wanted or required by something or that can be held, contained, or attained by it." (emphasis sic.) *Webster's Ninth New Collegiate Dictionary* 497 (1983).

{¶66} While the word "restitution" was used in the earlier common law to denote the

return or restoration of a specific thing or condition, "in modern legal usage its meaning has frequently been extended to include not only the restoration or giving back of something to its rightful owner, but also compensation, reimbursement, indemnification, or reparation for benefits derived from, or for loss or injury caused to, another." *Rowland v. Carr*, 2d Dist. Montgomery No. CA 9727, 1986 Ohio App. LEXIS 9931, *7-8 (Dec. 24, 1986), citing 18 Ohio Jurisprudence 3d, Contracts, Section 342, at 268 (1980). (Footnotes omitted.)

{¶67} After reviewing the relevant statutes and definitions, we conclude that R.C. 2929.19(B)(5) conflicts with the language of Marsy's Law. Specifically, when considering the above definitions, the constitutional provision clearly and unambiguously entitles a victim to full and complete reimbursement or compensation for the loss or injury caused by the offender. The use of the word "full" to describe the restitution owed to a victim does not leave room for any implication that the amount of restitution could be reduced or limited after consideration of the offender's ability to pay, or that the restitution order could be anything less than "complete" restitution. Additionally, because the legal use of the word "restitution" means to make a victim whole after injury, the plain language of Marsy's Law unambiguously provides that a victim is entitled to the complete amount that will make him whole. Allowing the consideration of the offender's ability to pay to potentially lessen or eliminate the amount of restitution owed to a victim would effectively render the word "full" meaningless. When determining a constitutional provision's purpose, the court simply cannot ignore the plain language of a constitutional provision. *Sheward*, 71 Ohio St. 3d at 522.

{¶68} Consequently, we conclude that Marsy's Law, as adopted in the Ohio Constitution, does not allow limitations on the amount of restitution that the victim should be awarded. Given this conclusion, we must now determine whether the conflict between R.C. 2929.19(B)(5) and Marsy's Law is irreconcilable. After a review, we conclude the two

provisions are irreconcilable.

{¶69} As noted above, any restitution awarded pursuant to Marsy's Law should be awarded in accordance with the procedures set forth in R.C. 2929.18. See *Knab*, 2020-Ohio-5219 at ¶ 18. Those procedures indicate a court may impose restitution upon the offender in an amount based upon the victim's economic loss, but do not otherwise limit the amount of restitution a victim can receive. R.C. 2929.18. Rather, R.C. 2929.18 simply employs the procedure the trial court must follow in order to impose restitution. *Id.*

{¶70} In contrast, the statutory provision at issue here, R.C. 2929.19(B)(5), requires the trial court to consider the offender's ability to pay before imposing restitution in accordance with R.C. 2929.18(A), and could effectively allow the trial court to reduce a restitution reward, or elect not to award restitution at all, if the defendant does not have a present and future ability to pay. Such a statutory requirement is plainly inconsistent with the victim's constitutional right to be made whole in a timely manner as set forth in Marsy's Law. That is, to the extent R.C. 2929.19(B)(5) allows the trial court to reduce a victim's restitution amount, or otherwise alter the offender's responsibility to provide full and timely restitution to the victim, we find the statute irreconcilably conflicts with the constitutional provision.

{¶71} As adopted, Marsy's Law provides that in instances where the provisions of Marsy's Law conflict with previously enacted statutes, the constitutional provision "shall supersede" the conflicting state law. Article I, Section 10a(E), Ohio Constitution. This is consistent with the well-settled law in Ohio that where constitutional provisions and the legislative enactment are "so clearly in conflict that they cannot both stand the statutory provision must fall." *Huwe*, 105 Ohio St. 304 at 306. Such a conflict exists here, and in accordance with Ohio law, we conclude Marsy's Law supersedes R.C. 2929.19(B)(5) to the extent the statute allows the trial court to reduce or otherwise modify the restitution amount

owed to a victim.

{¶72} Turning to the case at hand, and in light of the above analysis, we find the trial court did not commit plain error in declining to consider Oliver's ability to pay prior to ordering restitution. This is because, as noted above, the trial court was not required to consider Oliver's ability to pay prior to imposing restitution, as that requirement is in direct conflict with the trial court's obligation to impose "full" restitution in the amount of $990,027.83. Thus, we cannot say the trial court erred in failing to consider Oliver's ability to pay where the trial court was prohibited from reducing or modifying that amount, regardless of Oliver's ability to pay. Consequently, the trial court did not err in failing to consider Oliver's ability to pay prior to imposing the restitution order.

{¶73} Oliver's fourth assignment of error is without merit and is therefore overruled.

{¶74} Assignment of Error No. 5:

{¶75} THE TRIAL COURT ERRED IN ORDERING APPELLANT'S SIX TERMS OF IMPRISONMENT TO RUN CONSECUTIVELY.

{¶76} In his fifth assignment of error, Oliver argues the trial court erred by sentencing him to consecutive prison terms because the record does not support the imposition of consecutive sentences. After a review, we find no merit to Oliver's claims.

{¶77} This court reviews felony sentences pursuant to the standard of review set forth in R.C. 2953.08(G)(2) to determine whether the imposition of those sentences is clearly and convincingly contrary to law. *State v. Julious*, 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8. Pursuant to that statute, an appellate court may modify or vacate a sentence only if, by clear and convincing evidence, "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Harp*, 12th Dist. Clermont No. CA2015-12-096, 2016-Ohio-4921, ¶ 7.

{¶78} A sentence is not clearly and convincingly contrary to law where the trial court

considers the purposes and principles of sentencing as set forth in R.C. 2929.11, as well as the seriousness and recidivism factors listed in R.C. 2929.12, and sentences a defendant within the permissible statutory range. *State v. Brandenburg*, 12th Dist. Butler Nos. CA2014-10-201 and CA2014-10-202, 2016-Ohio-4918, ¶ 9.

{¶79} Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Dillon*, 12th Dist. Madison No. CA2012-06-012, 2013-Ohio-335, ¶ 9. First, the trial court must find that the consecutive sentence is necessary to protect the public from future crime or to punish the offender. *Id.*, citing R.C. 2929.14(C)(4). Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Id.* Third, the trial court must find that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶80} "A trial court satisfies the statutory requirement of making the required findings when the record reflects that the court engaged in the required analysis and selected the appropriate statutory criteria." *State v. Setty*, 12th Dist. Clermont Nos. CA2013-06-049 and

CA2013-06-050, 2014-Ohio-2340, ¶ 113. In imposing consecutive sentences, the trial court is not required to provide a word-for-word recitation of the language of the statute or articulate reasons supporting its findings. *Id.* Nevertheless, the record must reflect that the trial court engaged in the required sentencing analysis and made the requisite findings. *Id.* The court's findings must thereafter be incorporated into its sentencing entry. *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 10.

{¶81} On appeal, Oliver argues the trial court's consecutive sentencing decision is disproportionate to the danger the offender poses to the public. Oliver also argues the trial court's finding pursuant to R.C. 2929.14(C)(4)(b) is unsupported by the record. Specifically, Oliver claims that, because the victims are unnamed in the information, it is unclear which six victims were assigned to the six counts in the information. Thus, because some of the victims were paid in full by the time of Oliver's sentencing, and others suffered losses amounting to less than $3,000, those victims could have been assigned to the counts of the information, and cannot be considered to have suffered harm that was "great or unusual."

{¶82} Despite Oliver's arguments to the contrary, we find the trial court's sentencing decision is fully supported by the record. Oliver claims he is not a danger to the public because, at the time of sentencing, he was 61 years old, had honorably served nine years as a marine in the United States Armed Forces, and had no criminal record – all facts that he alleges indicate he is an "asset to his community." While we can agree with Oliver that some parts of the record tend to indicate he poses a minimal danger to the public, other parts of the record support the trial court's finding that consecutive sentences are not disproportionate to the danger he poses. Specifically, and as the trial court noted, Oliver used his position as a friend from the community to gain his victims' trust and steal their hard-earned money. Oliver manipulated his elderly clients into believing he was acting in their best interests and taking care of them, while the reality was much grimmer. Oliver's

actions depleted the savings and retirement accounts of many of his victims, many of whom Oliver knew were widowers or planning large donations to local charities, and left the victims with no resources for themselves or loved ones. Oliver's behavior was calculated and planned, and despite knowing his behavior was wrong, he continued until he was caught. Oliver's illegal actions continued for nearly 8 years, during which he continued building relationships and trust with his clients while actively using their funds for his personal gain. Such behavior is indicative of a person who is a threat to his community and its vulnerable members.

{¶83} Additionally, although Oliver notes his license with the Ohio Department of Insurance was revoked, and therefore, he poses no future threat to the community, at least two individuals who spoke at the sentencing hearing indicated Oliver had been disciplined by the Department of Insurance in the past and continued the illegal practices thereafter. Thus, although Oliver's license was revoked as a result of these proceedings, it appears similar sanctions were not effective in the past and did not prevent Oliver from continuing his illegal practices through other means.

{¶84} In light of the above, we find the nature of Oliver's crimes carries significant weight in determining the risk he poses to the community. Oliver has demonstrated the continued ability to deceive and manipulate vulnerable members of the community, many of whom he had developed longstanding personal relationships with over many years. Simply because Oliver's license has been revoked does not negate that he has consistently taken advantage of those around him, even after being reprimanded, and used his position in the community to better himself at the expense of others. Given the circumstances of the offense, we conclude the imposition of consecutive sentences is not disproportionate to the danger the Oliver poses to the public, and the trial court's finding is not clearly and convincingly unsupported by the record.

{¶85} We also disagree that the trial court's finding pursuant to R.C. 2929.14(C)(4)(b) is unsupported by the record. First, each count of the information indicates the amount taken was between $7,500 and $37,500. Therefore, it is impossible that the individual charges of the information were related to victims who had suffered losses less than $3,000. Additionally, Oliver and the state agreed the information was representative of all 18 victims, to which Oliver admitted causing $1.1 million in harm, with only a small amount that had been repaid. This clearly meets the threshold of "great" harm.

{¶86} Notwithstanding the above, even without considering the substantial amount of financial harm caused by Oliver's actions, many of the victims or their family members detailed the immeasurable psychological and emotional harm Oliver has caused. Such harm is appropriate for the trial court to consider when electing to impose consecutive sentences. See *State v. Withrow*, 2d Dist. Clark No. 2015-CA-24, 2016-Ohio-2884, ¶ 42 (when considering R.C. 2929.14[C][4], the harm caused need not be physical).

{¶87} Many individuals who spoke at the sentencing hearing specifically noted the emotional and psychological harm suffered by their loved ones as a result of Oliver's actions. For example, the daughter of one of the victims stated,

> I wish I could say the * * * money was the hurtful part of this whole situation for my family, but I'm sure that you gathered for us, it is not. It is the newfound inability to know how or who to trust, it was the stress, and the misplaced blame and guilt that I witnessed my mom experience through this situation. * * * But mostly it is the sheer betrayal by someone considered a friend, during a time where we already felt immense vulnerability and sadness, that has and will continue to have the most lasting effect on us.

Another family member noted that, due to Oliver's actions, her 99-year-old father developed trust issues and remained devastated. Another individual specifically asked the trial court to consider the mental health of Oliver's victims, as the anxiety and stress of the victims is "huge" and will continue for the rest of their lives. Another family member indicated the

harm, "[i]t's not just financial. He's really made quite a mess of a lot of people's lives."

{¶88} In light of the comments made at the sentencing hearing, it is evident from the record that Oliver's actions caused significant and irreparable harm, including monetary harm, as well as psychological and emotional harm, to his victims. When considering the amount of monetary harm Oliver imposed, in addition to the mental and emotional harm many of Oliver's victims will continue to suffer as a result of his actions, we find the record supports the trial court's findings that the harm caused by two or more of the multiple offenses so committed was so great that no single prison term would suffice. We further find the imposition of consecutive sentences is not disproportionate to the danger the Oliver poses to the public. As a result, we find the trial court's decision to impose consecutive sentences is not clearly and convincingly contrary to law.

{¶89} Based upon the above, Oliver's fifth assignment of error is overruled.

{¶90} Assignment of Error No. 6:

{¶91} APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE.

{¶92} In his remaining assignment of error, Oliver argues he received ineffective assistance of counsel for three reasons: (1) Trial counsel failed to object to a restitution in excess of the restitution cap negotiated in the pleas; (2) trial counsel failed to object to the trial court's decision not to consider Oliver's ability to pay before ordering restitution; and (3) trial counsel failed to require the state or the trial court to identify the six victims represented in the bill of information.

{¶93} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 200, citing *Strickland v. Washington*,

466 U.S. 668, 687-688, 694, 104 S.Ct. 2052 (1984) and *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. The defendant has the burden of proving his counsel rendered ineffective assistance. *Id.* at ¶ 223.

{¶94} As noted above, we conclude the trial court did not err in ordering restitution in the amount of $990,027.83, nor was it required to consider Oliver's ability to pay prior to imposing that amount of restitution. It was also not error, or prejudicial to Oliver, that the information did not identify the victims for each count. Therefore, finding no error in the trial court's decision ordering Oliver to pay restitution based upon the charges of the information, Oliver did not receive ineffective assistance of counsel when his trial counsel failed to object to the same. *See State v. Liming*, 12th Dist. Clermont Nos. CA2018-05-028 and CA2018-05-029, 2019-Ohio-82, ¶ 42. Accordingly, Oliver's sixth assignment of error lacks merit and is overruled.

{¶95} All of Oliver's assignments of error having been overruled, the judgment of the trial court is affirmed in its entirety.

{¶96} Judgment affirmed.

M. POWELL, P.J., and BYRNE, J., concur.