[Cite as *State v. Thorp*, 2023-Ohio-3629.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 112263 |
| v. | : | |
| VICKIE L. THORP, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** October 5, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-665389-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Anthony T. Miranda, Assistant Prosecuting
Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and
Rick L. Ferrara, Assistant Public Defender, *for appellant*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Vickie L. Thorp ("Thorp"), appeals from her conviction and sentence, raising the following assignments of error for review:

1.  The trial court committed plain error in convicting appellant of a felony of the second rather than third degree.

2.  The trial court committed plain error in ordering restitution when it was undisputed that appellant did not have the ability to pay.

3.  The trial court abused its discretion in ordering restitution when it was undisputed that appellant did not have the ability to pay.

4. The trial court committed plain error in ordering restitution in excess of the maximum amount agreed to at the plea hearing.

5.  The trial court abused its discretion in ordering restitution in excess of the amount agreed upon in civil settlement by third parties in relation to the same matter.

{¶ 2} After careful review of the record and relevant case law, we affirm in part, reverse in part, and remand for limited sentencing proceedings.

## I.  Procedural and Factual History

{¶ 3} On December 1, 2021, Thorp was named in a 12-count indictment, charging her with theft in violation of R.C. 2913.02(A)(2), with a furthermore specification that the victim of the offense is an elderly person or disabled adult and the value of the property or services stolen is $150,000 or more (Count 1); theft in violation of R.C. 2913.02(A)(3), with a furthermore specification that the victim of the offense is an elderly person or disabled adult and the value of the property or services stolen is $150,000 or more (Count 2); telecommunications fraud in violation of R.C. 2913.05(A) (Count 3); unauthorized use of property in violation of R.C. 2913.04(B), with a furthermore specification that the victim of the offense is an elderly person or disabled adult (Count 4); identity fraud in violation of R.C. 2913.49(B)(1), with a furthermore specification that the victim of the offense is an

elderly person or disabled adult (Count 5); and seven counts of money laundering in violation of R.C. 1315.55(A)(3) (Counts 6-12). The indictment stemmed from allegations that Thorp used her position as a caretaker to engage in an extensive fraud scheme to deprive the victim, Rosalyn Sievila ("Sievila"), now deceased, of approximately $229,748.50. (Tr. 41.)

{¶ 4} Following negotiations with the state, Thorp withdrew her previously entered pleas of not guilty and pleaded guilty to theft, a felony of the second degree, as amended in Count 1 of the indictment; telecommunications fraud, a felony of the second degree, as charged in Count 3 of the indictment; identity fraud, a felony of the second degree, as amended in Count 5 of the indictment; and two counts of money laundering, felonies of the third degree, as charged in Counts 6 and 7 of the indictment. In exchange for her guilty pleas, the state dismissed the remaining counts of the indictment and further deleted the elderly-persons specifications previously attached to Counts 1 and 5 of the indictment. In addition, the parties agreed to a cap on restitution in an amount not to exceed $223,000. (Tr. 12, 23.)

{¶ 5} On November 30, 2022, the trial court sentenced Thorp to a total, indefinite prison term of three to four and a half years pursuant to the Reagan Tokes Law. In addition, the trial court ordered Thorp to pay restitution in the amount of $229,748.50, with a previous payment of $4,000 credited to Thorp.

## II. Law and Analysis

## A. Felony Conviction

{¶ 6} In the first assignment of error, Thorp argues the trial court committed plain error in convicting her of a felony of the second degree rather than a felony of the third degree. Thorp suggests that the Ohio Revised Code does not contemplate a felony of the second degree for the theft offense she pleaded guilty to in this case.

{¶ 7} As previously stated, Thorp was originally charged with committing the offense of theft in violation of R.C. 2913.02(A)(2), with a furthermore specification that the victim of the offense is an elderly person or disabled adult and the value of the property or services stolen is $150,000 or more (Count 1). The theft statute specifies that the degree of the offense varies depending on the value of the property or services stolen and whether the offense was committed against a person of a protected class. With respect to the elderly specification originally attached to Count 1 of the indictment, R.C. 2913.02(B)(3) provides, in relevant part:

> [I]f the victim of the offense is an elderly person, disabled adult, active duty service member, or spouse of an active duty service member, a violation of this section is theft from a person in a protected class[.] * * * If the value of the property or services stolen is one hundred fifty thousand dollars or more, theft from a person in a protected class is a felony of the first degree.

{¶ 8} In turn, R.C. 2913.02(B)(2) applies when a person in a protected class is not involved. The statute provides, in relevant part:

> If the value of the property or services stolen is one hundred fifty thousand dollars or more and is less than seven hundred fifty thousand dollars, a violation of this section is aggravated theft, a felony of the third degree.

Thus, where, as here, the value of the stolen property or services is alleged to be more than $150,000, whether the theft offense is a felony of the first or third degree depends on whether the victim is a member of a protected class.

{¶ 9} On appeal, Thorp argues that pursuant to the plain language of R.C. 2913.02(B)(2) and (3), the state's decision to delete the "elderly specification" previously attached to Count 1 rendered the offense "a felony of the third, rather than second degree." Thorp states that if the court convicted her of a felony of the third degree, as directed by statute, her theft conviction did not constitute a qualifying offense under the Reagan Tokes Law and, therefore, she "was not subject to an indefinite sentence, presumption of prison, or term of years."

{¶ 10} After careful consideration, we are unpersuaded by Thorp's position on appeal. In this case, the state's decision to reduce the degree of the theft offense originally charged in Count 1 to a felony of the second degree was made pursuant to the terms of a negotiated plea agreement. Thorp was given the benefit of the reduction in exchange for her agreement to enter a plea of guilty to the theft offense committed against "Rosalyn Sievila/Estate of Rosalyn Sievila" in an amount exceeding $150,000. Thorp did not object to the state's characterization of the plea agreement or its statement that Count 1 of the indictment would be reduced to a felony of the second degree. (Tr. 10.) Nor did Thorp object or express a misunderstanding of the terms of the plea agreement when the trial court reviewed amended Count 1 on the record and explained the maximum penalties associated with a felony of the second degree. (Tr. 16-17.) For these reasons, the record reflects

that Thorp willingly accepted the state's plea offer with open eyes, and knowingly, intelligently, and voluntarily pleaded guilty to a second-degree felony as amended in Count 1.

{¶ 11} Under analogous circumstances, this court has found that a defendant's acceptance of guilt to an offense that is not cognizable under the Ohio Revised Code is treated as invited error when the plea was knowingly, intelligently, and voluntarily made. *See State v. Wooden*, 8th Dist. Cuyahoga No. 110340, 2022-Ohio-814, ¶ 18, citing *State v. Robinson*, 8th Dist. Cuyahoga No. 107598, 2019-Ohio-2330, ¶ 9, 12; *State v. Brawley*, 8th Dist. Cuyahoga No. 79705, 2002-Ohio-3115, ¶ 6, 20 (defendant's claim that it was "legally impossible" to be charged with offense to which he pled guilty did not warrant withdrawal of his negotiated guilty plea because any error was invited error); *State v. Lester*, 8th Dist. Cuyahoga No. 106850, 2018-Ohio-4893, ¶ 8-11 (although attempted involuntary manslaughter is a nonexistent crime in Ohio, defendant could not seek to set aside his conviction based on a claim that counsel was ineffective by allowing him to plead guilty to the nonexistent offense where defendant negotiated his plea to it with the state); *see also State v. Toms*, 2d Dist. Clark No. 2000 CA 64, 2001 Ohio App. LEXIS 3944, 3-6 (Sept. 7, 2001) (where defendant negotiated guilty plea to attempted involuntary manslaughter, any error by the trial court in accepting the plea was invited error and did not warrant reversal of defendant's conviction); *State v. Wickham*, 5th Dist. Muskingum No. CA 76-40, 1977 Ohio App. LEXIS 10210, 4-10 (Sept. 28, 1977) (defendant entering a negotiated guilty plea to attempted involuntary manslaughter,

even if a nonexistent offense, was not reversible error); *State v. Robinson*, 8th Dist. Cuyahoga No. 107598, 2020-Ohio-98, ¶ 12 ("[I]t must be noted that this court, as well as numerous other courts, have affirmed convictions based on guilty pleas to offenses the state could not prove where the defendant knowingly, intelligently, and voluntarily entered a guilty plea as part of a 'negotiated plea agreement.'").

{¶ 12} This court explained that

> [u]nder the invited error doctrine, "'a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make.'" *State v. Franks*, 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶ 8, quoting *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 471, 1998-Ohio-329, 692 N.E.2d 198 (1998). As this court explained in *Lester*, "the 'negotiated guilty plea * * * has consistently been given judicial approval as both a means of moving heavy criminal dockets and hopefully as the first step toward the defendant's rehabilitation.'" *Lester* at ¶ 9, quoting *Wickham* at [5]. "[B]ecause the 'criminal justice system and the defendant stand to gain by an enlightened use of the negotiated plea system,'" a defendant who negotiated a guilty plea to a nonexistent offense "cannot now complain that it should be set aside." *Lester* at ¶ 10-11, quoting *Wickham* at [6].

*State v. D-Bey*, 8th Dist. Cuyahoga No. 109000, 2021-Ohio-60, ¶ 35.

{¶ 13} We find this court's discussion of the invited error doctrine, and its application to a guilty plea involving "nonexistent offenses," is applicable to the circumstances presented in this case. Because Thorp knowingly, intelligently, and voluntarily pleading guilty to the second-degree felony offense of theft, she is precluded from relying on the language of R.C. 2913.02(B)(2) to take advantage of an alleged error she invited by negotiating a favorable plea agreement with the state.

{¶ 14} The first assignment of error is overruled.

## B. Ability to Pay Restitution

{¶ 15} In the second and third assignments of error, Thorp argues the trial court abused its discretion or otherwise committed plain error by ordering her to pay restitution in the amount of $229,748.50 when it was undisputed that she did not have the ability to pay.

{¶ 16} R.C. 2929.18(A)(1) provides a statutory mechanism for ordering restitution in felony cases. The statute limits the amount of restitution to "the amount of the economic loss suffered by the victim [or the victim's estate] as a direct and proximate result of the commission of the offense." *Id.* "The victim, victim's representative, victim's attorney, if applicable, the prosecutor or the prosecutor's designee, and the offender may provide information relevant to the determination of the amount of restitution." *Id.*

{¶ 17} "Economic loss" is defined in R.C. 2929.01(L) as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense," specifically including "property loss."

{¶ 18} The victim has the burden of proving the amount of restitution by the preponderance of the evidence. R.C. 2929.18(A)(1). Moreover, the amount of the restitution imposed "'must be supported by competent, credible evidence from which the court can discern the amount of the restitution to a reasonable degree of certainty.'" *State v. Johnson*, 2018-Ohio-3670, 119 N.E.3d 914, ¶ 55 (8th Dist.), quoting *State v. Gears*, 135 Ohio App.3d 297, 300, 733 N.E.2d 683 (6th Dist.1999). The evidence in the record must be enough to substantiate the relationship of the

offender's criminal conduct to the amount of the victim's loss. *State v. Norton*, 8th Dist. Cuyahoga No. 102017, 2015-Ohio-2516, ¶ 44.

{¶ 19} In addition to the foregoing statutory principles, Article I, Section 10a of the Ohio Constitution, commonly referred to as Marsy's Law, provides victims the right "to full and timely restitution from the person who committed the criminal offense or delinquent act against the victim[.]" Ohio Constitution, Article I, Section 10a(A)(7). Marsy's Law defines "victim" as "a person against whom the criminal offense or delinquent act is committed or who is directly and proximately harmed by the commission of the offense or act." Ohio Constitution, Article I, Section 10a(D).

{¶ 20} Notably, Ohio's version of Marsy's Law states, "All provisions of this section shall be self-executing and severable, and shall supersede all conflicting state laws." *Id*. at Section 10a(E). The Ohio Supreme Court has recently clarified that "no portion of Marsy's Law 'conflicts' with the restitution statutes such that they are 'supersede[d],' [by] Article I, Section 10a(E)." *State v. Yerkey*, Slip Opinion No. 2022-Ohio-4298, ¶ 12. "Consequently, the statutes governing 'restitution,'" including R.C. 2929.28(A)(1), "are still used to determine which losses qualify for restitution." *Id*. In reaching this conclusion, the court noted that "since the adoption of Marsy's Law, [Ohio courts] have continued to determine the amount of restitution based on the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." *Id*. at ¶ 13, citing *Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 1167, ¶ 19; *Cleveland v. Rudolph*, 8th Dist.

Cuyahoga No. 111128, 2022-Ohio-2363, ¶ 16-17; *State v. Dent*, 11th Dist. Lake No. 2020-L-110, 2021-Ohio-2551, ¶ 29-30; *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 23; *State v. Young*, 6th Dist. Lucas No. L-19-1189, 2020-Ohio-4943, ¶ 12-13; *State v. Yerkey*, 2020-Ohio-4822, 159 N.E.3d 1232, ¶ 26 (7th Dist.); *State v. Goff*, 2020-Ohio-1474, 153 N.E.3d 899, ¶ 3 (1st Dist.).

{¶ 21} On appeal, Thorp argues the trial court violated R.C. 2929.19(B)(5) and acted contrary to law by ordering her to pay restitution without considering her ability to pay and despite the evidence demonstrating that she was indigent, unemployed, and faced an impending multi-year prison term. Alternatively, Thorp contends that the trial court abused its discretion by "considering factors outside of the factors necessary to determine the ability to pay a restitution order, namely the 'egregious nature' of the offense."

{¶ 22} As noted by Thorp, R.C. 2929.19(B)(5) states that, before ordering restitution, "the court shall consider the offender's present and future ability to pay the amount of [restitution]." R.C. 2929.19(B)(5). Interpreting this provision, courts have recognized that there are no specific factors the trial court must evaluate in considering a defendant's present and future ability to pay. *See, e.g., State v. Cruz*, 8th Dist. Cuyahoga No. 106098, 2018-Ohio-2052, ¶ 27. For instance, the trial court need not make any specific findings on the record with respect to a defendant's ability to pay or expressly state on the record that it considered the defendant's ability to pay. *See, e.g., State v. Newton*, 8th Dist. Cuyahoga No. 107195, 2019-Ohio-3566, ¶ 49; *State v. Schneider*, 8th Dist. Cuyahoga No. 96953, 2012-Ohio-1740, ¶ 10.

However, "'there must be some evidence in the record that the trial court considered the defendant's ability to pay.'" *Schneider* at *id.*, quoting *State v. Jacobs*, 189 Ohio App.3d 283, 2010-Ohio-4010, 938 N.E.2d 79, ¶ 11 (8th Dist.).

{¶ 23} Based on this record and the current state of the law in this district, we find Thorp's arguments to be meritless. Initially, we note that although the trial court had no obligation to do so on the record, the court expressly stated at the sentencing hearing that it considered Thorp's "ability or inability to pay" when formulating its restitution order. (Tr. 59.) Thus, there is evidence in the record that the trial court complied with the mandates of R.C. 2929.19(B)(5).

{¶ 24} More significantly, however, Thorp's argument that restitution was not appropriate based on her present financial situation ignores this court's conclusion that "the provisions of Marsy's Law supersede the defendant's rights under R.C. 2929.19(B)(5)." *State v. Rudolph*, 8th Dist. Cuyahoga No. 111128, 2022-Ohio-2363, ¶ 18. As this court has explained:

> Whether a defendant is unable to pay the amount of restitution is irrelevant under Marsy's Law. In [*Ohio v. Oliver*, 2021-Ohio-2543, 176 N.E.3d 1054, ¶ 58 (12th Dist.)], the Twelfth District considered the conflict between an offender's rights as set forth in R.C. 2929.19(B)(5), which requires a trial court to consider an offender's ability to pay before ordering restitution, and the trial court's legal duty to provide victims with full and timely restitution in accordance with Marsy's Law. In finding that the provisions of Marsy's Law supersede the defendant's rights under R.C. 2929.19(B)(5), the *Oliver* court explained:
>
> "Marsy's Law provides that in instances where the provisions of Marsy's Law conflict with previously enacted statutes, the constitutional provision 'shall supersede' the conflicting state law. Article I, Section 10a(E), Ohio Constitution. This is consistent with the well-settled law in Ohio that where constitutional provisions and the

> legislative enactment are 'so clearly in conflict that they cannot both stand the statutory provision must fall.' * * * Such a conflict exists here, and in accordance with Ohio law, we conclude Marsy's Law supersedes R.C. 2929.19(B)(5) to the extent the statute allows the trial court to reduce or otherwise modify the restitution amount owed to a victim."

*Rudolph* at *id.*, quoting *Oliver* at ¶ 71, quoting *State ex rel. Price v. Huwe*, 105 Ohio St. 304, 306, 137 N.E. 167 (1922).

{¶ 25} Consistent with Article I, Section 10a(E) of the Ohio Constitution and the current precedent of this court, we find Thorp's alleged inability to pay restitution was not a valid basis on which the court could decline an order of restitution. *Id*. *See also Cleveland v. Fuller*, 8th Dist. Cuyahoga No. 111790, 2023-Ohio-1669, ¶ 23; *Oliver* at ¶ 67 ("Allowing the consideration of the offender's ability to pay to potentially lessen or eliminate the amount of restitution owed to a victim would effectively render the word 'full' meaningless."). Similarly, we do not find the trial court's brief reference to the "egregious nature" of Thorp's theft offense constituted an abuse of discretion or otherwise amounted to an "improper analysis" as Thorp suggests. Regardless of the court's characterization of the offenses, the trial court's award of restitution order was premised on the value of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. Accordingly, we find the restitution award was issued in accordance with the rights afforded to victims under R.C. 2929.18(A)(1) and Marsy's Law.

{¶ 26} The second and third assignments of error are overruled.

## C. Amount of Restitution

{¶ 27} In the fourth assignment of error, Thorp argues the trial court abused its discretion or otherwise committed plain error by ordering her to pay restitution in an amount that exceeded the amount agreed to at the plea hearing.

{¶ 28} On appeal, the state acknowledges that the trial court advised Thorp that the maximum amount of restitution that could be imposed under the terms of the negotiated plea agreement "is $223,000." (Tr. 23.) Thus, the state concedes that the trial court erred by imposing restitution in an amount that exceeded $223,000. Accordingly, we vacate the trial court's order of restitution and remand the matter for a resentencing hearing limited to determining the amount of restitution to be paid in an amount not to exceed $223,000.

{¶ 29} The fourth assignment of error is sustained.

## D. Civil Settlement Implications

{¶ 30} In the fifth assignment of error, Thorp argues the trial court abused its discretion or otherwise committed plain error by ordering restitution in an amount that is greater than the settlement paid to the estate in civil proceedings initiated in probate court.

{¶ 31} At the time of sentencing, Ross Babbitt, Esq., provided the court with pertinent background information concerning a civil action filed against Thorp by the estate in probate court. Babbitt stated that the estate sought $400,000 in damages resulting from Thorp's theft and money-laundering scheme. He confirmed that at the conclusion of the civil action, the estate received a settlement from PNC

Bank in the amount of $175,000. (Tr. 35.) As part of the settlement agreement, Thorp and her mother, Barbara Thorp, were each required to pay an additional $2,000 to the estate. Babbitt asserted that the settlement agreement did not make the estate whole for the losses caused by Thorp's criminal conduct, stating, "[f]rom my civil case, I got slightly less than 50 cents on the dollar of what our losses were. In other words, I sued for $400,000. I got $179,000." (Tr. 35.)

{¶ 32} Based on the information gathered from Babbitt, the trial court determined that it was appropriate to consider the civil-settlement agreement when calculating restitution in this matter. The court summarized its position as follows:

> I also find that I have the discretion to order payment to another party who has, in part, corrected the error that you committed. I'm ordering restitution in the total amount of $229,748.50. I give you credit for the $4,000 that you and your mother are required to pay pursuant to the settlement. That will be deducted from the total amount, which means you will pay the estate $50,748.50 and PNC Bank $175,000.

(Tr. 59-60.)

{¶ 33} On appeal, Thorp correctly states that R.C. 2929.18(A)(1) provides that "[a]ll restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender." Here, however, the award of restitution did not result in duplicate payments to the estate. Rather, the award was carefully constructed to avoid duplicate payments to the victim by limiting restitution to the estate to $50,748.50, while requiring Thorp to make PNC Bank whole for the restitution payment it was ordered to pay in the civil action as a proximate result of Thorp's criminal conduct.

{¶ 34} In this case, Thorp does not challenge whether the trial court had the authority to order her to pay restitution to PNC Bank in this criminal case. *See* App.R. 12 and 16. Rather, Thorp's argument is limited to the contention that the value of the settlement paid in the civil action, i.e., $179,000, more accurately reflected the actual loss suffered by the victim or the victim's estate. Thus, Thorp asserts that this court should vacate the restitution award and use our authority to cap the award at $179,000. She states, "[I]t was unreasonable and arbitrary to assign a different value than the parties agreed to at arms length."

{¶ 35} We find no merit to Thorp's position. While the trial court was required to consider the amount of funds recovered by the victim's estate in the civil action in order to avoid duplicate payments, the value of the settlement reached in that case did not alter the court's ability to apply R.C. 2929.18(A)(1) and order full and timely restitution based on the economic loss suffered by the victim or the victim's estate as a direct and proximate result of Thorp's felonious conduct. In this case, the state presented competent and credible evidence detailing the value of accounts depleted by Thorp before and after the victim's death. Thorp does not dispute the evidence relied on by the state or the court's conclusion that the parties "admitted that the [amount] defendant stole was $229,748.50." (Tr. 41.) Although the terms of the negotiated plea agreement prevented the court from imposing a restitution award that exceeded $223,000, the trial court was not limited by the terms of the settlement reached in the civil action and was free to render a judgment

that complied with the terms of the plea agreement and the confines of R.C. 2929.18(A)(1). Thorp has cited no persuasive authority to suggest otherwise.

{¶ 36} The fifth assignment of error is overruled.

{¶ 37} Judgment affirmed in part, reversed in part, and remanded to the trial court to impose an award of restitution that is consistent with the terms of the negotiated plea agreement.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

ANITA LASTER MAYS, A.J., and
MICHAEL JOHN RYAN, J., CONCUR