[Cite as *State v. Scott*, 2024-Ohio-2274.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

      Plaintiff-Appellant,              :

                                        No. 22AP-475

v.                                                :        (C.P.C. No. 22CR-464)

Thomas B. Scott,                                 :        (REGULAR CALENDAR)

      Defendant-Appellee.              :

---

D E C I S I O N

Rendered on June 13, 2024

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Brendan Inscho*, for appellant. **Argued:** *Brendan Inscho.*

**On brief:** *Mitchell A. Williams*, Public Defender, and *George M. Schumann*, for appellee. **Argued:** *George M. Schumann.*

---

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Defendant-appellee, Thomas B. Scott, committed or attempted to commit a series of home invasions in 2021 when he was homeless, without adequate food, unemployed, and struggling with alcohol dependency. Lacking adequate resources and support throughout most of his 61 years of life, Mr. Scott has a history of committing property—and poverty—related crimes. It is undisputed Mr. Scott's financial circumstances were meager at all relevant times in this case.

{¶ 2} Mr. Scott pled guilty to the indictment and was sentenced to an indefinite prison term of 10 to 12 years. At sentencing, the parties stipulated to restitution in the amount of $250, as requested by one of the victims. Over the objection of plaintiff-

appellant, the State of Ohio, the trial court deferred Mr. Scott's obligation to pay the restitution award until his release from prison.

{¶ 3} The state now appeals from the July 14, 2022 judgment of the Franklin County Court of Common Pleas, arguing the deferred restitution component of Mr. Scott's sentence infringes on the Ohio Constitution's victims' rights amendment, Article I, Section 10a—commonly known as "Marsy's Law." Specifically, the state contends that suspending a defendant's obligation to pay restitution at sentencing on account of the defendant's present indigency and impending incarceration violates a victim's right to "full *and timely* restitution" under Article I, Section 10a(A)(7) of the Ohio Constitution. For the following reasons, we agree.

## I. FACTS AND PROCEDURAL OVERVIEW

{¶ 4} On February 9, 2022, a Franklin County grand jury indicted Mr. Scott with one count of attempted aggravated burglary, charged with a repeat violent offender specification (Count 1), and two counts of burglary (Counts 2 and 3). These charges pertained to two home invasions and one attempted home invasion that occurred in December 2021. Property was taken from just one of those homes, as the owners of the other two homes were inside when Mr. Scott attempted the unlawful entries. The record before us does not indicate what was taken, though the absence of such information suggests its value was de minimis.

{¶ 5} At the time the December 2021 offenses were committed, Mr. Scott was under community control supervision in Franklin C.P. No. 19CR-4126 for trespass in a habitation conviction. He was also under post-release control supervision in Franklin C.P. No. 19CR-3611 for a burglary offense he committed in 2019.

{¶ 6} On July 13, 2022, Mr. Scott entered a counseled guilty plea to all three counts, but without the repeat violent offender specification charged with Count 1. (*See* July 13, 2022 Tr. at 21-45.) After accepting Mr. Scott's plea and finding him guilty of all three counts in Franklin C.P. No. 22CR-464, the trial court immediately proceeded to sentencing.

{¶ 7} After considering the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors of R.C. 2929.12, the trial court imposed the following indefinite mandatory prison terms: 4 to 6 years for Count 1; 3 to 4.5 years for

Count 2; and 3 to 4.5 years for Count 3. The trial court then ordered the sentences to run consecutively, for a total aggregate indefinite prison sentence of 10 to 12 years.[1]

{¶ 8} This appeal concerns the trial court's imposition of restitution in case No. 22CR-464. The state sought restitution in the amount of $250 to compensate one victim, C.H., and her husband, for what they "had to go through in terms of cleaning up their home that [Mr. Scott] broke into, left his blood behind." (Tr. at 49.) Notably, neither C.H. nor her husband appeared at Mr. Scott's sentencing hearing. And, no evidence supporting the requested amount was presented by the state.

{¶ 9} In any event, the parties agreed to restitution in the amount of $250. (*See* Tr. 22.) However, they disagreed on whether Mr. Scott should be required to pay restitution while he is incarcerated. Noting Mr. Scott's indigency and impending prison sentence, Mr. Scott's trial counsel argued that his obligation to pay restitution should be suspended while he is incarcerated. While not contesting Mr. Scott's indigent status or inability to pay in the future, the trial prosecutor argued that delaying the payment of restitution for at least ten years ran afoul of Marsy's Law. Specifically, the state posited that deferring any payment of restitution while Mr. Scott is incarcerated infringed on C.H.'s right to "full **and timely** restitution" under Article I, Section 10a(A)(7) of the Ohio Constitution. (Emphasis added.) The trial court noted the state's objection. Over the state's objection, the trial court ordered Mr. Scott to pay restitution in the amount of $250 to C.H. but deferred payment pending his release from prison. (July 18, 2022 Confid. Rest. Order.)

{¶ 10} The trial court memorialized Mr. Scott's convictions and sentence in a judgment entry issued July 14, 2022. At C.H.'s request, the state timely appealed from that judgment pursuant to R.C. 2945.67(A), App.R. 4(B)(2), and Article I, Section 10a(B) of the Ohio Constitution.

{¶ 11} The state asserts the following assignment of error for our review:

> BY DEFERRING RESTITUTION TEN YEARS, THE TRIAL JUDGE UNLAWFULLY CONSIDERED [MR. SCOTT'S] ABILITY TO PAY.

---

[1] After imposing the prison sentence in case No. 22CR-464, the trial court terminated Mr. Scott's community control as unsuccessful in case No. 19CR-4126 and his post-release control in case No. 19CR-3611 in exchange for his execution of promissory notes for the amounts of restitution due in those cases, $1,100 and $3,300, respectively. The propriety of the deferred restitution ordered in those two cases is not at issue in this appeal.

**II. ANALYSIS**

{¶ 12} The state's sole assignment of error concerns the propriety of the trial court's decision to defer Mr. Scott's obligation to pay the $250 restitution ordered until after he is released from prison.

{¶ 13} Initially, we note it is undisputed that C.H. is a victim for purposes of Marsy's Law. *See* Ohio Constitution, Article I, Section 10a(D) (defining "victim"). There is likewise no dispute as to the amount of the restitution ordered or C.H.'s entitlement to receive it. Instead, the state's appeal narrowly takes issue with the trial court's order deferring restitution payment for the duration of Mr. Scott's 10-to-12-year prison sentence.

{¶ 14} At the outset, we note the trial court did not indicate at the sentencing hearing or in its judgment entry the legal basis for suspending Mr. Scott's obligation to pay restitution during his period of incarceration. Indeed, the trial prosecutor recognized at sentencing that deferring payment of restitution while a defendant is incarcerated "is customary in this courthouse" and "is how things are done here in Franklin County." (Tr. at 66-67. *See also* Tr. at 48-49 (trial prosecutor recognizing his request that Mr. Scott be ordered to pay restitution while incarcerated was "unusual").)

{¶ 15} On appeal, the state presumes the trial court's decision to defer restitution payment was grounded in R.C. 2929.19(B)(5). That provision provides: "[b]efore imposing a financial sanction under section 2929.18 of the Revised Code * * * the court shall consider the offender's present and future ability to pay the amount of the sanction." Restitution is a financial sanction contemplated in R.C. 2929.18.

{¶ 16} As it relates to restitution, the state contends R.C. 2929.19(B)(5) has been superseded by Marsy's Law. While other appellate districts have held as much when considering whether a reduced or no restitution award violates a victim's right to "full" restitution under Marsy's Law, we are presented with a different issue in this case. Instead, we must determine whether the Marsy's Law right to "fully and ***timely*** restitution" prohibits a trial court from deferring—be it pursuant to R.C. 2929.19(B)(5) or otherwise— a defendant's obligation to pay properly imposed restitution pending incarceration at the sentencing hearing.

{¶ 17} For the following reasons, we conclude that it does.

### A. Standard of Review

{¶ 18} Generally, we review a trial court's imposition of restitution as part of a felony sentence under the "contrary to law" standard set forth in R.C. 2953.08(G)(2)(b). *See*, *e.g.*, *State v. Anderson*, 10th Dist. No. 18AP-103, 2018-Ohio-4618, ¶ 10. To satisfy that standard, we must clearly and convincingly find the trial court's imposition of restitution was " ' "in violation of statute or legal regulations at a given time." ' " *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, ¶ 22, quoting *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990).

{¶ 19} At issue in this case, however, is whether the trial court's decision to defer the payment of restitution violated the Marsy's Law amendment to the Ohio Constitution. Thus, we must construe the relevant constitutional provision to determine whether the trial court acted in violation of it.

{¶ 20} In interpreting the language of a constitutional provision ratified by direct vote, like Marsy's Law, we must consider how the language would have been understood by the voters who adopted the amendment. *State v. Fisk*, 171 Ohio St.3d 479, 2022-Ohio-4435, ¶ 6, citing *Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, ¶ 22, citing *Castleberry v. Evatt*, 147 Ohio St. 30, 33 (1946).

{¶ 21} In so doing, "[w]e generally apply the same rules of construction that govern the interpretation of statutes." *Fisk* at ¶ 6, citing *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, ¶ 14. We begin with the plain text and, presuming the voters were aware of the laws in existence at the time they voted to adopt the constitutional amendment, consider " 'how the words and phrases would be understood by the voters in their normal and ordinary usage.' " *State v. Yerkey*, 171 Ohio St.3d 367, 2022-Ohio-4298, ¶ 9, quoting *Knab* at ¶ 22, citing *District of Columbia v. Heller*, 554 U.S. 570, 576-77 (2008).

{¶ 22} Further, to the extent appropriate in this case, " '[w]e review constitutional challenges to state and local legislation de novo.' " *Newburgh Hts. v. State*, 168 Ohio St.3d 513, 2022-Ohio-1642, ¶ 18, quoting *Put-In-Bay v. Mathys*, 163 Ohio St.3d 1, 2020-Ohio-4421, ¶ 11.

{¶ 23} Logically, then, our analysis must begin with an examination of Marsy's Law and Ohio's corresponding sentencing statutes.

**{¶ 24}** Before Marsy's Law was adopted in Ohio, Article I, Section 10a of the Ohio Constitution already established some general rights for crime victims. *See* former Article 1, Section 10a, Ohio Constitution (effective Nov. 8, 1994 to Feb. 4, 2018); *Yerkey* at ¶ 10; *Knab* at ¶ 10, 15. The primary authority to define and provide those rights, however, was vested in the Ohio legislature. *See Yerkey* at ¶ 10, quoting former Article I, Section 10a, Ohio Constitution (" '[T]he general assembly shall define and provide by law' " the rights of crime victims " 'to reasonable and appropriate notice, information, access, and protection and to a meaningful role in the criminal justice process.' ").

**{¶ 25}** In November 2017, Ohio voters approved changes to Article I, Section 10a of the Ohio Constitution as part of a ballot initiative known as Marsy's Law. *Knab* at ¶ 11, 15. Effective February 5, 2018, the Marsy's Law amendment to Article I, Section 10a of the Ohio Constitution "contains a number of explicit guarantees designed to strengthen the rights of crime victims" and to make those rights enforceable. *Yerkey* at ¶ 24 (DeWine, J., dissenting); *Knab* at ¶ 12-15.

**{¶ 26}** This case deals only with the right to "full ***and timely*** restitution" recognized in Marsy's Law.

## B. Victim's Right to Restitution

**{¶ 27}** Prior to the adoption of the Marsy's Law amendment, restitution awards in criminal cases were governed entirely by sentencing statutes. *See Yerkey* at ¶ 11, citing R.C. 2929.18(A)(1) and 2929.28(A)(1). Indeed, former Article I, Section 10a of the Ohio Constitution was silent on a crime victim's right to restitution. Ohio's sentencing statutes, however, provided that victims should receive restitution from defendants whose crimes directly and proximately caused victims to suffer economic loss or detriment. *See Yerkey* at ¶ 11, 19; R.C. 2929.18(A)(1) and 2929.28(A)(1). *See also* R.C. 2929.01(L) (defining "economic loss" in the context of a criminal case). At the same time, Ohio statutory law required—and still requires—a trial court to "consider the offender's present and future ability to pay the amount of the sanction or fine" before imposing a financial sanction like restitution as part of a criminal defendant's sentence. R.C. 2929.19(B)(5). As a result, trial courts would sometimes order less than the full restitution amount—or no restitution award at all—to victims of crime after finding the defendant lacked the present and future ability to pay it.

{¶ 28} Marsy's Law now provides victims with a constitutional right "to full ***and timely*** restitution from the person who committed the criminal offense or delinquent act against the victim." (Emphasis added.) Article I, Section 10a(A)(7), Ohio Constitution. And, by its own terms, the Marsy's Law amendment is "self-executing" and "shall supersede all conflicting state laws." Article I, Section 10a(E), Ohio Constitution.

{¶ 29} Although the Marsy's Law amendment guarantees crime victims the right to "full ***and timely*** restitution," it "does not provide a procedural mechanism for ordering restitution." *Knab* at ¶ 18. And the Supreme Court of Ohio has held that "no portion of Marsy's Law 'conflicts' with the [existing] restitution statutes such that they are 'supersede[d].' " *Yerkey* at ¶ 12, quoting Article I, Section 10a(E), Ohio Constitution. *But see Yerkey* at ¶ 32-33 (DeWine, J., dissenting.) (refuting majority opinion's claim that "no portion of Marsy's Law 'conflicts' " with the pre-amendment restitution statutes). "Consequently, the statutes governing 'restitution' are still used to determine which [economic] losses qualify for restitution." *Yerkey* at ¶ 12-15 (holding that "full ***and timely*** restitution" in the Marsy's Law amendment does not vastly expand what losses qualify for restitution).

{¶ 30} To resolve the issue presented here, we must determine how voters understood "timely restitution," in its normal and ordinary usage, when they voted to approve the Marsy's Law amendment in 2017.[2]

## C. Meaning of "Timely Restitution" in Marsy's Law

{¶ 31} "Timely restitution" is not defined in the Ohio Constitution or any corresponding sentencing statutes. Thus, we must determine what a voter who knew the then-existing law would have understood "timely restitution" to mean and whether that meaning conflicts with the trial court's decision to defer restitution while Mr. Scott is incarcerated in this case. *See Knab* at ¶ 22.

{¶ 32} When a passed provision does not define its operative words, courts should give the words their ordinary, everyday meaning. *See Yerkey* at ¶ 9, citing *Knab* at ¶ 22.

---

[2] We note the ballot language before voters only specified that Marsy's Law would provide to victims "the right to restitution." *See Knab* at ¶ 15. While we are puzzled by the decision not to include the full text of this proposed amendment in the ballot language placed on the 2017 general election ballot, we recognize that Article XVI, Section 1 of the Ohio Constitution vests the Supreme Court with exclusive, original jurisdiction in all cases challenging the propriety of ballot language prescribed by the Ohio Ballot Board. *See, e.g., State ex rel. Voters First v. Ohio Ballot Bd.*, 133 Ohio St.3d 257, 2012-Ohio-4149, ¶ 61-63 (O'Connor, C.J., concurring.).

Only if we find the language at issue is unclear or ambiguous should we consider the " 'history of the amendment and the circumstances surrounding its adoption, the reason and necessity of the amendment, the goal the amendment seeks to achieve, and the remedy it seeks to provide' " when determining the meaning of constitutional text adopted by direct vote. *See Yerkey* at ¶ 9, quoting *Knab* at ¶ 22.

{¶ 33} In *Yerkey*, the Supreme Court defined "timely" as " '[o]f an action or circumstance: done or occurring sufficiently early or in good time; prompt.' " *Id.* at ¶ 14, quoting *Oxford English Dictionary*, https://www.oed.com/view/Entry/202120 (accessed Nov. 20, 2022). In rejecting the state's contention that Marsy's Law's use of "full and timely" to describe restitution expanded the type of losses that qualify for restitution, the *Yerkey* court found neither "full" nor "timely" redefined the nature of the noun both words modify: restitution. *Id.* at ¶ 14. Thus, the *Yerkey* court concluded that the "full ***and timely*** restitution" referenced in Article I, Section 10a(A)(7) of the Ohio Constitution "is still 'restitution'; it is simply restitution that is completely accomplished in a prompt manner." *Id.*

{¶ 34} Other definitions for the meaning of "timely" are instructive. For instance, the Cambridge Dictionary defines "timely" as "happening at the best possible moment." *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/timely (accessed June 11, 2024). "Timely" is also defined as "coming early or at the right time; appropriate or adapted to the times of the occasion." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/timely (accessed June 11, 2024).

{¶ 35} With these definitions in mind, we consider whether the right to "timely restitution" conflicts with R.C. 2929.19(B)(5).

### D. Application of R.C. 2929.19(B)(5) to Post-Marsy's Law Amendment Restitution Orders.

{¶ 36} Prior to the enactment of Marsy's Law, R.C. 2929.19(B)(5) required sentencing courts to consider a defendant's "present and future ability to pay the amount" of any financial sanction—including restitution—before it was imposed. *See also* R.C. 2929.18(A). Pursuant to this provision, trial courts have historically reduced or declined to make any restitution award against defendants who lack the present or future ability to pay it. Notably, the Ohio General Assembly has twice updated provisions of the Ohio Revised Code concerning the rights of crime victims to better reflect the changes made to Article I,

Section 10a of the Ohio Constitution by the Marsy's Law amendment. *See* 2022 Sub.H.B. No. 343 (effective April 6, 2023); 2023 Sub.S.B. No. 16 (effective July 7, 2023). In neither instance has the Ohio legislature repealed or modified the language of R.C. 2929.19(B)(5).

{¶ 37} On appeal, the state posits that "[s]ince the enactment of Marsy's Law, R.C. 2929.19(B)(5) no longer applies to restitution." (Appellant's Brief at 13; Reply Brief at 1-2.) Specifically, the state takes issue with trial courts relying on R.C. 2929.19(B)(5) to defer restitution payment while an indigent defendant is incarcerated. We again note, however, the trial court did not state at the sentencing hearing or in its judgment entry that its decision to defer restitution was pursuant to R.C. 2929.19(B)(5) or any other sentencing statute. Indeed, the trial prosecutor himself recognized during Mr. Scott's sentencing that deferring payment of restitution while a defendant is incarcerated is "customary" and "how things are done" in the Franklin County Court of Common Pleas. (*See* Tr. at 66-67.)

{¶ 38} In any event, the state presupposes this decision was pursuant to R.C. 2929.19(B)(5). And Mr. Scott does not contend otherwise. Nor does the state challenge the propriety of deferring restitution pending incarceration ***prior*** to the adoption of Marsy's Law. As such, setting aside any potential implications of Marsy's Law, we presume in this case that sentencing courts generally have the authority to defer payment of financial sanctions while a defendant is in prison at sentencing. *See* R.C. 2929.18(A)(1) (authorizing a trial court to modify "the payment terms of any restitution ordered"). *But see State v. Wilson*, 2d Dist. No. 24461, 2012-Ohio-1660, ¶ 24 ("[A] court lacks the power to grant [a stay of restitution] absent statutory authority[,] * * * and we are aware of none.").

{¶ 39} The state concedes the novelty of the issue presented in this case. (*See* Appellant's Brief at 13.) Indeed, we are not aware of any Ohio court addressing whether a defendant's current and future ability to pay restitution has any bearing on the "timely restitution" guarantee provided by Marsy's Law. Thus, the state supports its position by relying on decisions from other Ohio appellate districts opining that R.C. 2929.19(B)(5) conflicts with—and thus, is superseded by—a victim's constitutional right to "full" restitution under Article I, Section 10a(A)(7) of the Ohio Constitution. (*See* Appellant's Brief at 13-15.)

{¶ 40} In the cases cited by the state, the reviewing district courts held that a defendant's present and future ability "to pay the ***amount*** of restitution is irrelevant under

Marsy's Law." (Emphasis added.) *Cleveland v. Rudolph*, 8th Dist. No. 111128, 2022-Ohio-2363, ¶ 18. *See also Ohio v. Oliver*, 12th Dist. No. CA 2020-07-041, 2021-Ohio-2543, ¶ 64-72; *Cleveland v. Fuller*, 8th Dist. No. 111790, 2023-Ohio-1669, ¶ 23; *State v. Thorp*, 8th Dist. No. 112263, 2023-Ohio-3629, ¶ 24-29. Notably, however, those cases only concerned a sentencing court's decision to order either a ***reduced*** restitution award or ***no*** restitution at all based on the defendant's present and future inability to pay. *See id. See also State v. Messer*, 3d Dist. No. 1-23-25, 2023-Ohio-4355, ¶ 13-20.

**{¶ 41}** But our sister districts did not consider the timely restitution issue presented in this case. Thus, we decline to broadly apply any pronouncements made by those courts when considering whether R.C. 2929.19(B)(5) conflicts with a victim's right to ***timely*** restitution. At the same time, we do not take issue with the narrow holdings in those cases regarding Marsy's Law's guarantee of ***full*** restitution.[3]

**{¶ 42}** Although the state frames the "timely restitution" issue as presenting a conflict between R.C. 2929.19(B)(5) and Marsy's Law, we do not see it that way. Article I, Section 10a(E) of the Ohio Constitution provides only that the Marsy's Law amendment "shall supersede all ***conflicting*** state laws." (Emphasis added.) By its own terms, then, "the constitutional provision operates in conjunction with state laws with which it does not conflict." *Yerkey* at ¶ 33 (DeWine, J., dissenting). And, it is only to the extent that a state law conflicts with the amendment that the constitution supersedes. *See, e.g.*, *State ex rel. Price v. Huwe*, 105 Ohio St. 304, 306 (1922).

**{¶ 43}** R.C. 2929.18(A)(1) requires trial courts to "determine the ***amount*** of restitution to be made by the offender" "[a]t ***sentencing***." (Emphasis added.) And R.C. 2929.19(B)(5) mandates that, ***before imposing*** any financial sanction, a trial court must consider a defendant's "present and future ability to pay the ***amount*** of the sanction," which bears on the right to full restitution enumerated in Marsy's Law. (Emphasis added.)

---

[3] Indeed, recent changes to Ohio's victim's rights laws confirm a sentencing court can no longer reduce or decline to award restitution, pursuant to R.C. 2929.19(B)(5), based on a defendant's present and future ability to pay the "full" amount of a victim's economic losses due to the criminal offense. Effective April 6, 2023, H.B. No. 343 updated provisions of the Ohio Revised Code concerning the rights of crime victims to better reflect the changes made to Article I, Section 10a of the Ohio Constitution by the Marsy's Law amendment. *See* 2022 Sub.H.B. No. 343, *available at* https://www.legislature.ohio.gov/legislation/134/hb343 (accessed June 11, 2024). Among other things, H.B. No. 343 addressed a victim's constitutional right to restitution by creating R.C. 2929.281. But that statute has no application to this case because it took effect after Mr. Scott was sentenced and neither party argues for its retroactive application on appeal.

However, the language of that statute is not directly implicated when, ***after*** imposing the full restitution amount as part of a defendant's sentence, the trial court delays ***payment*** of that restitution award while a presently indigent defendant is incarcerated.

{¶ 44} Because R.C. 2929.19(B)(5) does not contemplate any post-imposition considerations regarding the deferment of restitution ***payments***, the state's contention that R.C. 2929.19(B)(5) conflicts with a victim's right to "timely restitution" under Marsy's Law is not well-taken. *See also Wilson*, 2012-Ohio-1660, at ¶ 24 (noting the absence of any statutory authority permitting a trial court to stay payment of restitution after sentencing).

{¶ 45} To be sure, the actual payment of any restitution, fines, or costs imposed as part of a defendant's sentence relates to the ***enforcement*** of that sentence, not the imposition of the sentence itself. On that point, we note the state's position that "federal equal protection and due process limitations on incarceration for failure to pay restitution are unaffected by Marsy's Law." (Appellant's Brief at 16, citing *State v. West*, 12th Dist. No. CA2017-07-091, 2018-Ohio-640, relying on *Bearden v. Georgia*, 461 U.S. 660 (1983).) And, at oral argument, the state expressly disclaimed any notion that a defendant should— or could—be imprisoned for failing to comply with a restitution obligation solely because they lack the resources to pay it. Thus, neither the practicalities of collecting restitution from an indigent or incarcerated defendant nor the propriety of any enforcement mechanisms after sentencing is at issue in this case.

{¶ 46} The state emphasizes the length of the delay in this case—10 to 12 years—to argue the trial court's deferment of restitution violated the definition of "timely" contemplated by Marsy's Law. But, how long a trial court stays a defendant's restitution obligation is not the lodestar for evaluating the issue presented here. Veritably, the ultimate question is much broader. That is, whether a trial court has any authority, ever, at sentencing to suspend payment of restitution while a defendant is incarcerated because of the timeliness requirement in Marsy's Law.

{¶ 47} Having determined that, at the time the Marsy's Law amendment was adopted, voters would have understood "timely" to mean, in relevant part, "prompt," "done or occurring * * * in good time," "happening at the best possible moment," and "appropriate or adapted to the times of the occasion," we conclude that deferring restitution at sentencing due to a defendant's impending incarceration is unconstitutional. Preemptively

suspending a defendant's obligation to pay restitution quite plainly infringes on a victim's right to "timely" restitution because such suspension necessarily forecloses any possibility that the defendant might acquire adequate financial resources to pay the restitution ordered—at least in part—while he is in prison.[4]  As such, prematurely preventing a victim's recovery based on a sentencing court's anticipation of a defendant's future insolvency clearly contravenes the notion of "timeliness" guaranteed by Marsy's Law.  Accordingly, we conclude that, because of the timeliness requirement in Marsy's Law, a trial court has no authority at sentencing to suspend a defendant's obligation to pay restitution while he is incarcerated.

{¶ 48} Of course, the difficulty still lies in a victim's ability to successfully enforce that right—i.e., collect.  *See, e.g., State v. Napper*, 4th Dist. No. 06CA2885, 2006-Ohio-6614, ¶ 16 (observing that, in the absence of other visible means of support, indigent defendant's prison sentence of 51 years to life rendered it highly unlikely he would have a "future ability" to pay restitution).  In any event, a trial court's role at sentencing regarding the imposition of restitution has no bearing on the issue of enforcement.  Rather, a trial court's obligation at sentencing, unless stipulated to by the parties, is to "determine the **amount** of restitution to be made by the offender."  (Emphasis added.)  R.C. 2929.18(A)(1).  To do this, a court must: (1) determine whether the person or entity seeking restitution qualifies as a "victim" under Marsy's Law, *e.g., Knab*, 2020-Ohio-5219; (2) evaluate whether a preponderance of the evidence shows the economic loss alleged, as defined in R.C. 2929.01(L), was suffered as a direct and proximate result of the criminal offense, *see State v. Perez*, 10th Dist. No. 19AP-134, 2019-Ohio-5323, ¶ 10; and (3) order restitution in the amount of the economic loss suffered by a qualified victim as a direct and proximate result of the offense, *e.g., Yerkey*, 2022-Ohio-4298.

---

[4] "R.C. 5120.133 authorizes the withdrawal of money from a prisoner's account upon receipt of a certified copy of a judgment of a court of record in an action in which the prisoner was ordered to pay a stated obligation." *State v. Brown*, 156 Ohio App.3d 120, 2004-Ohio-558, ¶ 9 (10th Dist.) Ohio Adm.Code 5120-5-03 was promulgated by the Ohio Department of Rehabilitation and Correction ("ODRC") "to establish guidelines and procedures for withdrawing money that belongs to an inmate and that is in an account kept for the inmate" by the prison. *See id.* However, as the state notes, an inmate's account cannot be depleted even if garnishment is permissible. Ohio Adm.Code 5120-5-03(D) provides: "[i]f withdrawals are authorized and if there are sufficient funds in the inmate's account to satisfy the amount shown as due, as long as the account retains twenty-five dollars for inmate expenditures, the designee will promptly cause a check to be issued payable to the clerk of the court or other appropriate authority issuing the order." *See Wassenaar v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 07AP-712, 2008-Ohio-1220, ¶ 20-21 (observing the necessary protective procedures ODRC must follow to withdraw money from an inmate's account).

{¶ 49} Although a trial court may specify the payment terms of any restitution ordered at sentencing, it is not required to do so. *See* R.C. 2929.18(A)(1). *But see State v. Carr*, 2d Dist. No. 28193, 2019-Ohio-3802, ¶ 15-17 (suggesting restitution payment terms cannot be modified post-sentencing under R.C. 2929.18(A)(1) where no payment terms were specified in the original sentencing entry).

{¶ 50} Any predicted difficulty in collecting restitution from an indigent, incarcerated defendant does not dispense with a sentencing court's obligation to guarantee a victim's right "to full and timely restitution." Pragmatically, the issue of a defendant's ability to pay restitution imposed at sentencing must instead be addressed when the defendant's expected failure to pay the restitution ordered becomes a post-sentencing reality. As to a victim's method of successfully enforcing his or her right to the timely payment of restitution from an indigent defendant who is incarcerated, we ungrudgingly leave the task of figuring out how Marsy's Law supposes to force blood from a stone, within the confines of the law, for someone else on another day.[5]

{¶ 51} We sustain the state's sole assignment of error.

## III. CONCLUSION

{¶ 52} Having sustained the state's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand the matter to the Franklin County Court of Common Pleas for the limited purpose of modifying its judgment entry in a manner consistent with this decision.

*Judgment reversed;*
*cause remanded with instructions.*

MENTEL, P.J., and BEATTY BLUNT, J., concur.

———————————

[5] *See, e.g.*, Matthew Dickman, *Should Crime Pay?: A Critical Assessment of the Mandatory Victims Restitution Act of 1996*, 97 Calif. L.Rev. 1687 (2009) (discussing the inefficacy of imposing mandatory restitution orders on indigent defendants); Kay L. Levin, *Victims' Rights in the Diversion Landscape*, 74 SMU L.Rev. 501 , 523 (2021) (observing data showing that most restitution awards are never paid in full, especially when a defendant is incarcerated, because most defendants do not have the means to pay); Joseph Shapiro, *As Court Fees Rise, the Poor Are Paying the Price*, NPR (May 19, 2014, 4:02 pm), http://www.npr.org/2014/05/19/312158516/increasing-court-fees-punish-the-poor (accessed June 11, 2024) (noting the vast majority of people who appear before criminal courts are " 'already very poor and marginalized people in our society' ").